UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

BRYAN JACOBSON,

                    Plaintiff,

          v.

WASHINGTON STATE UNIVERSITY, a
State agency, the STATE OF
WASHINGTON, and STEVEN J. HANSEN,
a married man and his marital
community,

                    Defendants.

No. CV-05-0092-FVS

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** came before the Court for a hearing on the
Defendants' Motion for Summary Judgment, Ct. Rec. 10, on December 18,
2006.  The Plaintiff was represented by Patrick J. Kirby.  The
Defendants were represented by Holly A. Vance.

**BACKGROUND**

The Plaintiff, Bryan Jacobson, began working for Defendant
Washington State University ("WSU") on April 27, 1990.  During the
times relevant to this action, Jacobson was the only African American
employed at WSU's Public Safety Department ("the Department").  In
either 1999 or 2000, he was promoted to the position of Police
Sergeant.

During his employment at WSU, Jacobson allegedly spoke out
against what he perceived as racial hostility and discrimination in

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 1

the Department.  On July 18, 2000, Jacobson filed a law suit against WSU, alleging racial discrimination and retaliation in violation of the Washington Law Against Discrimination.  The parties settled the suit on March 13, 2001.  The settlement agreement requires WSU to provide an additional 40 hours of training in law enforcement and diversity.

In November of 2000, WSU issued Jacobson an interest-free, non-revolving credit card.  The card was to be used for work-related travel only.  The parties dispute the point in time at which Jacobson became aware of this restriction.  On December 9, 2003, J.P. Morgan Chase notified WSU that Jacobson's account was 90 days past due.  An examination of Jacobson's account revealed that he had used his travel card for personal purchases totaling $26,646.34.  On June 7, 2004, Defendant Steven J. Hansen, the Chief of Police for WSU's Public Safety Department, discharged Jacobson on the grounds that he had used his travel card inappropriately.

Jacobson appealed his dismissal to the Personnel Appeals Board ("PAB").  The PAB held a hearing on May 17, 2005.  During the proceedings, Jacobson argued that he was discharged in retaliation for his lawsuit against WSU and his subsequent attempt to enforce the settlement agreement.  In support of his retaliation claim, Jacobson introduced evidence that persuaded the PAB that "there was uncertainty regarding the normal practice of WSU travel card use prior to 2003, and there was a common perception that it was acceptable to charge personal items on the cards as long as the balance was paid."

On July 8, 2005, the PAB issued its Findings of Fact, Conclusions

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 2

of Law and Order of the Board.  The PAB held that Jacobson's unauthorized use of his card constituted neglect of duty and willful violation of a published policy.  The PAB also held that Jacobson had not committed malfeasance or gross misconduct.  Based on these findings, the PAB concluded that the sanction of termination was too severe and modified Jacobson's sanction to demotion to the position of Police Officer.

In September of 2005, Chief Hansen took disciplinary measures against four other Department employees who had made personal purchases on their travel cards.  Three employees received a reduction in pay for a number of months, while a fourth employee received a letter of reprimand.  In September of 2006, Assistant Chief Scott West also received a letter of reprimand.

On May 24, 2006, Jacobson filed the present suit, alleging six causes of action: 1) retaliation in violation of Washington's Law Against Discrimination ("LAD") and Title VII of the Civil Rights Act of 1964 ("Title VII"); 2) wrongful discharge in violation of public policy; 3) negligent retention and supervision; 4) negligent infliction of emotional distress; 5) outrage; and 6) a 42 U.S.C. § 1983 claim alleging deprivation of civil rights.  The Plaintiff seeks to recover lost wages, special damages, general damages for emotional distress, his costs and attorney's fees, punitive damages, and prejudgment interest.

**DISCUSSION**

**I.   SUBJECT MATTER JURISDICTION**

The Plaintiff alleges two federal causes of action and four state

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 3

causes of action.  The Plaintiff's federal claims arise under 42

U.S.C. § 2000e-3 and 42 U.S.C. § 1983.  This Court has jurisdiction to

hear these two claims pursuant to 28 U.S.C. § 1331.

        The Court has discretion to exercise supplemental jurisdiction

over the Plaintiff's four state law claims pursuant to 28 U.S.C. §

1367.  Section 1367 provides that, when a federal district court has

subject matter jurisdiction over a claim, the court may also grant

"supplemental jurisdiction over all other claims that are so related

to claims in the action within such original jurisdiction that they

form part of the same case or controversy under Article III."  In this

case, the Plaintiff's state law claims form part of the same case or

controversy as the Plaintiff's Title VII and Section 1983 claims

because all claims are based on the Plaintiff's discharge and the

Defendants' treatment of other officers who similarly misused their

travel cards.

## II.  APPLICABLE LAW

        A federal district court sitting in diversity must apply the

substantive law of the forum state.  *Gasperini v. Center for*

*Humanities, Inc.*, 518 U.S. 415, 426-427, 116 S. Ct. 2211, 2219, 135 L.

Ed. 2d 659, 673 (1996); *Erickson v. Desert Palace, Inc.*, 942 F.2d 694,

695 (9th Cir 1991) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58

S.Ct. 817, 82 L. Ed. 1188 (1938).  A federal court exercising

supplemental jurisdiction over a state law claim must apply the law of

the forum state just as it would if it were sitting in diversity.

*Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470 (9th Cir.

1995).  This Court accordingly applies Washington law to the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 4

Plaintiff's state law claims.

When called upon to determine the preclusive effect of a state administrative decision, federal district courts apply state law standards of res judicata.[1] *Northwest Sea Farms, Inc. v. United States Army Corps of Eng'r*, 931 F. Supp. 1515, 1522 (W.D. Wash. 1996). Federal courts give the  factual findings of state agencies the same preclusive effect the findings would be given in the state's own courts when the agency, "acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *Univ. of Tenn. v. Elliot*, 478 U.S. 788, 799, 106 S. Ct. 3220, 3226, 92 L. Ed. 2d 635, 646 (1986)(internal quotation marks omitted); *Olson v. Morris*, 188 F.3d 1083, 1086 (9th Cir. 1999).  As a matter of federal common law, district courts also apply the law of preclusion articulated in *Elliot* to an administrative agency's legal conclusions.  *Wherli v. County of Orange*, 175 F.3d 692, 694 (9th Cir. 1999).

**III. SUMMARY JUDGMENT STANDARD**

A moving party is entitled to summary judgment when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L. Ed. 2d 265, 273-274 (1986).  "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the

---

[1]The term "res judicata" encompasses both the doctrine of claim preclusion and the doctrine of issue preclusion. *Christensen v. Grant County Hosp. Dist.*, 96 P.3d 957, 961 n. 3 (Wash. 2004).

parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

Initially, the party moving for summary judgment bears the burden of showing that there are no issues of material fact for trial. *Celotex*, 477 U.S. at 317. Where the moving party does not bear the burden of proof at trial, it may satisfy this burden by pointing out that there is insufficient evidence to support the claims of the nonmoving party. *Id.* at 325.

If the moving party satisfies its burden, the burden then shifts to the nonmoving party to show that there is an issue of material fact for trial. Fed. R. Civ. P. 56(e), *Celotex*, 477 U.S. at 324. There is no issue for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L. Ed. 2d 202, 212 (1986). Conclusory allegations alone will not suffice to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). Rather, the non-moving party must present admissible evidence showing there is a genuine issue for trial. Fed. R. Civ. Fed. R Civ. P. 56(e); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995).

## V.   RETALIATION UNDER THE LAW AGAINST DISCRIMINATION

In order to state a prima facie case of retaliatory discharge under Washington law, a plaintiff must establish three elements: 1) that he or she engaged in a protected activity; 2) that he or she was discharged; and 3) that "retaliation was a substantial factor behind the discharge." *Vasquez v. State*, 974 P.2d 348, 353 (Wash. Ct. App.

1  1999); *Hines v. Todd Pac. Shipyards Corp.*, 112 P.3d 522, 530-31 (Wash.

2  Ct. App. 2005).

3      The Plaintiff alleges that the Defendants terminated his

4  employment in retaliation for the Plaintiff's complaints about WSU's

5  treatment of minorities and the LAD suit he filed in 2000. Complaint

6  ¶ 22. As evidence, the Plaintiff relies on his allegation that he was

7  treated more harshly than the many other Department employees who used

8  their cards for personal purchases.

9      The Defendants argue that the doctrine of collateral estoppel

10  bars the Plaintiff's retaliation claims. Collateral estoppel, also

11  referred to as "issue preclusion," bars the relitigation of a factual

12  issue that has been previously decided in a proceeding between the

13  same parties. *Christensen*, 96 P.3d at 960-61. Though frequently

14  confused with the related doctrine of claim preclusion, collateral

15  estoppel is distinct from claim preclusion in that it applies even

16  where a new cause of action has been asserted in the later proceeding.

17  *Id.*

18      Under Washington law, collateral estoppel applies when four

19  elements are present. First, the issue decided in the earlier

20  proceeding must be identical to the issue at stake in the later

21  proceeding. Second, the earlier proceeding must have concluded with a

22  judgment on the merits. Third, the party against whom collateral

23  estoppel is asserted must have been a party to the earlier proceeding.

24  Finally, the application of collateral estoppel must not work an

25  injustice on the party against whom it is asserted. *Id.* at 961. The

26  party asserting collateral estoppel bears the burden of proof. *Smith*

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 7

*v. State*, 144 P.3d 331 (Wash. Ct. App. 2006).

Collateral estoppel applies to factual findings made by state administrative agencies. *Christensen*, 96. P.3d at 961. Washington courts consider three additional factors before applying collateral estoppel to agency findings: first, whether the agency acted within its competence, second, the differences between procedures in the administrative proceeding and court procedures, and third, public policy considerations. *Id.* at 961-62.

According to the Defendants, all of the necessary factors are present in the Plaintiff's retaliation claim. First, according to the Defendants, the PAB determined that Jacobson was discharged because of his improper use of his government credit card. Second, the PAB decision resulted in a final determination on the merits. Third, Jacobson was a party to the PAB proceedings. Fourth, the Defendants argue that it would not be unfair to bar Jacobson's claims on the basis of collateral estoppel because he took full advantage of the procedures available in presenting his claim to the PAB. He also had the opportunity to appeal. The Defendants do not address the three additional factors that must be considered before administrative findings will be given preclusive effect.

The Plaintiff makes four arguments in support of his position that collateral estoppel does not bar his retaliation claim. First, the Plaintiff argues that the issues before the PAB and those before this Court are not identical. Second, the Plaintiff argues that applying collateral estoppel to his retaliation claim would work an injustice. Third, the Plaintiff argues that new evidence precludes

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 8

the application of collateral estoppel to his retaliation claim. Fourth, the Plaintiff argues that the PAB was[2] not competent to decide his retaliation claim under the LAD.  The Plaintiff does not contest that Jacobson was a party to the PAB proceedings or that the PAB proceeding resulted in a final decision on the merits.

### A.    Identity of Issues

The Court finds that the issues before the PAB and this Court are identical.  Jacobson presented his retaliation argument to the PAB and the PAB concluded "there is no evidence to substantiate Appellant's claim that he was treated differently."  Def.'s Ex. 2 ¶ 2.20.  Given that the Plaintiff relies upon this alleged disparate treatment to prove the third element of his retaliation claim, the PAB's finding is fatal to his retaliation claim.

Jacobson argued his retaliation claim at some length before the PAB.  His retaliation claim was the central theme of Mr. Kirby's opening statement at the PAB hearing, as Mr. Kirby commenced and concluded his opening statement with the argument, "This case is simply about using a convenient opportunity to discharge a police officer who has exercised his civil rights."  Def.'s Ex. 3 at 44. Through his cross examination of WSU witnesses, Jacobson sought to prove that many other employees similarly misused their travel cards and received less severe penalties.  Jacobson questioned multiple witnesses about the use of travel cards by other officers for personal purchases, the Department's knowledge of this practice, and the

---

[2]Since January 1, 2006, actions formerly appealed to the PAB have been appealed to the personnel resources board.  2006-03 Wash. Reg. 70 (Feb. 1 2006).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 9

disciplinary actions taken in response to travel card misuse by other officers.  Def.'s Ex. 3 at 183-205, 317-339.

The PAB considered and rejected the evidence of disparate treatment.  In its Order of July 8, 2005, the PAB noted that Jacobson, "raise[d] the argument of retaliation based on a lawsuit he filed against WSU for racial discrimination in 2000 because others who used their credit cards for personal purposes were not disciplined." Def.'s Ex. 2 ¶ 2.20.  In its Findings of Fact, the PAB found the Plaintiff's argument was unsubstantiated by the evidence, explaining,

> Appellant never provided Chief Hansen with any names of employees engaging in similar misconduct.  Therefore, Chief Hansen did not have direct knowledge regarding other employees' personal use at the time he imposed Appellant's disciplinary action.

*Id.*

### B.  Injustice

Under Washington law, "the injustice component is generally concerned with procedural, not substantive, irregularity." *Christensen*, 96 P.3d at 309.  Thus, the application of collateral estoppel may result in injustice when the earlier proceeding was "an informal, expedited hearing with relaxed evidentiary standards." *Id.* The application of collateral estoppel may also be inappropriate where the relief available in the earlier proceeding was so disparate from that available in the present proceeding that "a party would be unlikely to have vigorously litigated the crucial issues in the first forum." *Id.*

The Court finds that applying collateral estoppel to the Plaintiff's retaliation claim would not work an injustice under

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 10

Washington law.  As the Defendants have observed, the Plaintiff enjoyed procedural protections in the PAB hearing that are similar to those available in a court proceeding.  The Plaintiff was represented by counsel, introduced exhibits, presented testimony from witnesses, and cross-examined WSU's witnesses.  The Plaintiff has not suggested that he lacked motivation to try his claims vigorously before the PAB and the almost five hundred pages of transcript of the hearing suggest that he did, in fact, pursue his claim vigorously.

The Plaintiff's argument that WSU presented false evidence to the PAB does not demonstrate unfairness.  The Plaintiff is arguing, in essence, that the PAB erred in relying on WSU's evidence.  As the Defendant observes, if the Plaintiff wished to relitigate the PAB's decision, he could have appealed the PAB's decision directly rather than bringing a separate action in this Court.

The Plaintiff's argument that the PAB did not address the knowledge of any officer other than Hansen is likewise unavailing. While the PAB cited Chief Hansen's lack of direct knowledge as the reason for its rejection of the Plaintiff's retaliation argument, Jacobson questioned other WSU officers about their knowledge of travel card misuse.  Had the Plaintiff convinced the PAB that other WSU personnel were aware of the widespread misuse of travel cards, the PAB's factual finding on the Plaintiff's retaliation argument would have been phrased differently.

### C.    New Evidence of Disparate Treatment

Persuasive authority suggests that collateral estoppel does not apply to any claim based on facts that did not arise until after the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 11

initial proceeding.  *Shaw v. Cal Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 606-607 (9th Cir. 1986); Gametech *Internat'l, Inc., v. Trend Gaming Sys., LLC*, 264 F. Supp. 2d 906, 911.  Based on this authority, the Plaintiff argues that the disparity between his termination and the disciplinary measures imposed after the PAB hearing on five other employees constitutes new evidence that precludes application of collateral estoppel.

The Court does not find this argument persuasive.  Neither of the decisions cited by the Plaintiff apply Washington law: *Shaw* applies California law, and *Gametech* applies Arizona law.  In addition, the claims in *Shaw* and *Gametech* were both based on conduct that did not occur until after the termination of the prior proceeding.  In contrast, the conduct underlying the Plaintiff's retaliation claim is his discharge.  The allegedly disparate treatment of the Plaintiff is evidence presented for the purpose of illustrating the motive for his discharge.  New evidence of disparate treatment is therefore just that: new evidence about conduct that has already been ruled upon.  Most importantly, the transcript of the PAB hearing illustrates that the Plaintiff did present substantial evidence of disparate treatment to the PAB.  The PAB was apparently unconvinced by the evidence, and it is not for this Court to question the PAB's finding.

### 4.    PAB Competence to Determine Retaliation Issue

The PAB is generally competent to decide all employee defenses. The Washington Court of Appeals has held, "the PAB has authority to consider all defenses raised by an employee in an appeal of a disciplinary matter, so long as the appeal is properly before the

PAB." *Goodman v. Employment Sec. Dep't*, 847 P.2d 29, 31 (Wash. Ct. App. 1993). The Supreme Court of Washington more recently held that the Public Employment Relations Commission ("PERC"), the agency charged with resolving labor disputes, was "competent to decide factual issues raised in unfair labor practices complaints, such as a claim of discharge in retaliation for engaging in union activity." *Christensen*, 96 P. 3d at 968. By analogy, it appears that the PAB, as the agency formerly charged with hearing appeals from suspended employees, is competent to decide factual issues concerning "any properly supported defense that an employee asserts to a disciplinary action." *Goodman,* at 103-04. The Washington case law the Defendants rely upon does not refute this point, as it deals with the issue of claim preclusion rather than issue preclusion. *See Christensen*, 96 P.3d at 967-968.

Accordingly, the Court holds that the PAB's determinations have preclusive effect upon the Plaintiff's LAD claim.

**VII. RETALIATION UNDER TITLE VII**

In order to state a prima facie case of retaliatory discharge under Title VII, a plaintiff must establish 1) that he or she engaged in a protective activity opposing an unlawful employment practice, 2) that he or she suffered an adverse employment action, and 3) the existence of "a causal link between the protected activity and the adverse action." *Raad v. Fairbanks N. Star Borough*, 323 F.3d 1185, 1196-97 (9th Cir. 2003); *Fritag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006).

The Defendants argue that the Plaintiff's Title VII claim is

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 13

unavailing for two reasons.  First, the Defendants argue that the Title VII claim is barred by collateral estoppel for the same reasons that the LAD claim is barred.  Second, the Defendants argue that the Plaintiff's protected activity occurred too long before his discharge to establish the necessary causal link.  Noting that timing is an "important element" in assessing causation, the Defendants observe that the Plaintiff engaged in protected conduct by filing a lawsuit in 2000 and filing complaints with the Center for Human Rights ("CHR") in 1992 and 1998.

**A.    Collateral Estoppel**

Legislative intent may preclude the application of collateral estoppel to causes of action created by statute.  *Christensen,* 96 P.3d at 964.  This is the case with Title VII claims, as both the Supreme Court and the Ninth Circuit have held that unreviewed factual findings of administrative agencies do not have preclusive effect on court actions subsequently brought under Title VII.  *Elliot*, 478 U.S. at 795; *McInnes v. California*, 943 F.2d 1088, 1093-94 (9th Cir. 1991).  Accordingly, the Court holds that the Plaintiff's Title VII claim is not barred by collateral estoppel.

**B.    Insufficient Evidence of Causal Nexus**

In order to state a prima facie case of retaliation under Title VII, an employee must prove the existence of a causal link between his protected activity and his or her discharge.  *Raad,* 323 F.3d at 1196-97.  An employee may satisfy the causal link element by introducing evidence of temporal proximity between protected conduct and discharge, evidence that the employer expressed opposition to employee

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 14

speech, or evidence that the "employer's proffered explanations for the adverse employment action were false and pre-textual." *Id.* at 977.

The Defendants' suggestion that the length of time between the Plaintiff's protected conduct and his discharge creates a presumption against wrongful conduct is unpersuasive for two reasons. First, in the cases cited by the Defendants, the plaintiffs relied upon temporal proximity alone to establish causation. In the present case, the Plaintiff alleges that the more lenient disciplinary actions imposed on other employees who engaged in similar misconduct demonstrate that his discharge was retaliatory.

Second, the Defendants' argument presupposes that the passage of a certain amount of time negates the element of causation. The Ninth Circuit has expressly rejected this sort of bright line rule:

> There is no set time beyond which acts cannot support an inference of retaliation, and there is no set time within which acts necessarily support an inference of retaliation. [. . .] the length of time, considered without regard to its factual setting, is not enough by itself to justify a grant of summary judgment

*Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003).

The Plaintiff's Title VII claim therefore survives summary judgment.

## V.    Wrongful Discharge

In order to state a prima facie case of wrongful discharge in violation of public policy under Washington law, the Plaintiff must prove three elements.

> The plaintiff must prove (1) the existence of a clearly mandated public policy (the clarity element); (2) that discouraging the plaintiff's conduct would jeopardize that

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 15

public policy (the jeopardy element); and (3) that the plaintiff's public policy-linked conduct was the reason for the dismissal (the causation element).

*Gaspar v. Pschastin Hi-Up* Growers, 129 P.3d 627, 630 (Wash. Ct. App. 2006). *See also Fosmo v. State Dept of Personnel*, 59 P.2d 105, 107 (Wash. Ct. App. 2002).

Collateral estoppel bars the Plaintiff's wrongful discharge claim. As with the Plaintiff's retaliation claim, the Plaintiff relies upon the more lenient treatment of other officers to prove the motive underlying his discharge. The PAB's determination that the Plaintiff was not treated differently precludes the Plaintiff from satisfying the causation element of his wrongful discharge claim.

The Court is not persuaded by the Plaintiff's argument that courts may not apply collateral estoppel to wrongful discharge claims based on findings of the PAB. In making this argument, the Plaintiff relies upon the Washington Court of Appeals' decision in *Vargas* v. State, 65 P.3d 330 (Wash. Ct. App. 2003). The Supreme Court of Washington discredited the *Vargas* opinion in *Christensen*, explaining that the *Vargas* court confused the doctrine of issue preclusion with that of claim preclusion. An administrative agency may be incompetent to rule upon a common law tort claim and yet still be competent to decide a factual issue necessary to prove an element of that tort claim. 96 P.3d at 967 n.11.

The Court holds that the PAB's determinations have preclusive effect upon the Plaintiff's wrongful discharge claim.

## VI. SECTION 1983

Any person who deprives an American citizen of his or her civil

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 16

rights under color of law may be held liable for injuries that result from the deprivation.  42 U.S.C. § 1983.  The Plaintiff alleges that the Defendants deprived him of his First Amendment rights by discharging him in retaliation for "speaking out" against alleged racial hostility and discrimination within the Department and for filing the 2000 suit under the LAD.  In order to prevail upon this claim, the Plaintiff must prove that he engaged in protected speech, that the Defendants took an adverse employment action against him, and that his protected speech was a "substantial or motivating factor" for the adverse employment action.  *Thomas v. City of Beaverton*, 379 F.3d 802, 808 (9th Cir. 2004).

The Defendants argue that the Section 1983 claim should be dismissed for three reasons.  First, the Defendants argue that they are absolutely immune to suit under Section 1983.  Second, the Defendants argue that, even if Chief Hansen is not absolutely immune to suit, he is protected by qualified immunity.  Finally, the Defendants argue that collateral estoppel bars the Section 1983 claim.

A.   **Absolute Immunity**

Neither a state agency nor a state official acting in his or her official capacity is a "person" subject to a suit for damages under Section 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 109 S. Ct. 2304, 2308, 105 L. Ed. 2d 45, 52 (1989); *Lapides v. Bd. of Regents*, 535 U.S. 613, 617, 122 S. Ct. 1640, 1642, 152 L. Ed. 806, 811 (2002); *Bank of Lake Tahoe v. Bank of America*, 318 F.3d 914, 918 (9th Cir. 2003).  Public universities, as state instrumentalities, are likewise immune to suit under Section 1983.  *Thompson v. City of Los*

*Angeles*, 885 F.2d 1439, 1442 (9th Cir. 1989).  While public officials enjoy immunity for actions taken in their official capacity, public officials sued in their individual capacities are persons subject to suit under Section 1983.  *Hafer v. Melo,* 502 U.S. 21, 30, 112 S. Ct. 358, 363, 116 L. Ed. 2d 301, 313 (1991).

Both the State of Washington and WSU are absolutely immune to the Plaintiff's Section 1983 claim.  The Plaintiff acknowledges that WSU is a "state agency."  The Plaintiff is seeking to recover only damages, rather than injunctive relief, from the State and WSU.  The Plaintiff's Section 1983 claims against the State and WSU must accordingly be dismissed.

Chief Hansen, however, does not enjoy absolute immunity from suit under Section 1983 for actions taken in his individual capacity.  The Defendants argue that Chief Hansen should be absolutely immune because, at all times relevant to this lawsuit, he was acting in his official capacity.  However, the Supreme Court has explicitly rejected this argument, explaining, "the phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury."  *Hafer,* 502 U.S. at 27.  The Plaintiff in the present action has named Chief Hanson in his individual capacity.  Chief Hansen therefore does not enjoy absolute immunity.

**B. Qualified Immunity**

Under the doctrine of qualified immunity, government officials are immune from civil liability for performing discretionary functions unless their actions violate "clearly established statutory or

constitutional rights of which a reasonable person would have known."
*Morgan v. Morgensen*, 465 F.3d 1041, 1044 (9th Cir. 2006)(citing *Harlow
v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396,
410 (1982)).  Determining whether an official is entitled to qualified
immunity entails a two step process.  First, the Court must determine
whether the facts alleged by the Plaintiff "show the officer's conduct
violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194,
201-02, 121 S. Ct. 2151, 2156,  150 L. Ed. 2d 272, 281 (2001).
Second, the Court must determine whether the right in question was
clearly established such that a reasonable officer would know his or
her conduct was unlawful. *Saucier*, 533 U.S. at 202; *Morgan*, 465 F.3d
at 1044.  The Plaintiff bears the burden of proving that the right was
clearly established. *DiRuzza v. County of Tehama*, 206 F.3d 1304, 1313
(9th Cir. 2000).

In this case, the Plaintiff alleges that Chief Hansen discharged
him in retaliation for his First Amendment activities.  The Defendants
argue that Chief Hansen is entitled to qualified immunity because he
considered a number of factors prior to discharging the Plaintiff and
several other officers agreed with him that termination was the
appropriate sanction for the Plaintiff's misuse of his travel card.

The Defendants misunderstand the standard for qualified immunity.
On a motion for summary judgment, the Court must assume that all
disputed facts will be resolved in favor of the nonmoving party.
*Saucier,* 533 U.S. at 201-02.  Assuming, as the Plaintiff alleges, that
Chief Hansen discharged the Plaintiff in retaliation for his speech,
this action would violate the Plaintiff's First Amendment rights.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 19

This satisfies the first step noted above.

Turning to the second step of the inquiry, the right to be free from retaliation for First Amendment activities was clearly established at the time Chief Hansen discharged the Plaintiff. The Ninth Circuit has held, "as early as 1983, it could hardly be disputed that [. . .] an individual had a clearly established right to be free of intentional retaliation by government officials based upon that individual's constitutionally protected expression." *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1319 (9th Cir. 1989). *See also DiRuzza,* 206 F.3d at 1313; *Hyland v. Wonder*, 117 F.3d 405, 410 (9th Cir. 1997). Accordingly, Chief Hansen is not entitled to qualified immunity.

### C.    Collateral Estoppel

In applying the doctrine of collateral estoppel, the Court considers whether the findings of the PAB preclude the Plaintiff from proving any of the required elements of his Section 1983 claim. The Plaintiff argues, and the Defendants do not dispute, that the Plaintiff's complaints about racial discrimination and his 2000 lawsuit under the LAD constitute protected speech. Nor have the Defendants disputed that discharging the Plaintiff constituted an adverse employment action. Rather, the Defendants' argument suggests that the PAB's findings preclude the Plaintiff from proving that his First Amendment activities were a substantial or motivating factor in his discharge.

The PAB premised its rejection of the Plaintiff's retaliation claim on its finding that the evidence did not support the Plaintiff's

contention that he was treated differently from other employees who similarly misused their travel cards.  While the Plaintiff has not explicitly indicated that his Section 1983 claim is premised upon such disparate treatment, he has made the same arguments concerning the application of collateral estoppel to his Section 1983 claim as he has for his retaliation and wrongful discharge claims, both of which rely upon the alleged disparate treatment.  As the Plaintiff is precluded from arguing that he was treated differently from other employees, the PAB's ruling precludes him from satisfying the third element of his Section 1983 claim.  The Section 1983 claim must accordingly be dismissed.

**VII. NEGLIGENT SUPERVISION AND RETENTION**

An employer may be held liable for the negligent hiring, retention, or supervision of an employee when two elements are present.  First, the plaintiff must show that the employer knew, or should have known by exercising ordinary care, that the employee was unfit.  Second, the plaintiff must show that retaining or failing to supervise the employee was a proximate cause of the plaintiff's injuries.  *Betty Y. v. Al-hellou*, 988 P.2d 1031, 1032-33 (Wash. Ct. App. 1999); *Crisman v. Pierce County Fire Prot. Dist. No. 21*, 60 P.3d 652, 654 (2002).

The Plaintiff alleges that WSU was negligent in retaining and failing to investigate Chief Hansen.  The Defendants argue that the Plaintiff's negligent retention and supervision claim is barred by collateral estoppel because the PAB found that Chief Hansen did not discharge the Plaintiff for a discriminatory purpose.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 21

While the Defendants' argumentation on this point is far from clear, the Court finds that collateral estoppel bars the Plaintiff's negligent retention and supervision claim. As explained above, the Plaintiff must prove that Chief Hansen was somehow "unfit" for his position in order to state a claim of negligent retention and supervision. Given that the PAB's findings preclude the Plaintiff from arguing that Chief Hansen treated him differently from other employees, discharged him in retaliation for his First Amendment conduct, or discharged him in violation of public policy, there is no remaining basis for the Plaintiff's negligent supervision and retention claim.[3]

## VIII.    OUTRAGE

The tort of outrage, also referred to as "intentional infliction of emotional distress," has three elements in the state of Washington. *Orin v. Barclay*, 272 F.3d 1207, 1219 (9th Cir 2001). First, the plaintiff must demonstrate that the defendant engaged in "extreme and outrageous" conduct. Second, the plaintiff must prove that the defendant intentionally or recklessly inflicted emotional distress on the plaintiff. Third, the plaintiff must prove that the defendant's actions actually resulted in "severe emotional distress." *Id.*

The Defendants argue that the Plaintiff's outrage claim should be dismissed for two reasons. First, the Defendants argue that the Plaintiff's outrage claim is duplicative of the Plaintiff's civil

---

[3]The considerations of legislative intent that exempt the Plaintiff's Title VII claim from the preclusive effects of the PAB's decision do not apply to a common law tort claim such as negligent retention and supervision.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 22

rights claims.  Second, the Defendants' argue that the Plaintiff's outrage claim is barred by the doctrine of claim preclusion.

### A.    Duplication

A claim is duplicative and must be dismissed under Washington law when the plaintiff asserts the same factual basis for two claims. Washington courts have dismissed both negligent infliction of emotional distress and outrage claims as duplicative of discrimination claims.  See *Francom v. Costco Wholesale Corp.*, 991 P.2d 1182, 1192 (Wash. Ct. App. 2000)(dismissing negligent infliction of emotional distress claim as duplicative of LAD claim); *Anaya v. Graham*, 950 P.2d 16, 596 (Wash. Ct. App. 1998)(dismissing outrage claim as duplicative).

The Court is not persuaded that the Plaintiff's outrage claim is duplicative of the Plaintiff's civil rights claims.  As the Plaintiff argues, the outrage claim is based on a different set of facts from his retaliation and wrongful discharge claims.  The Plaintiff's retaliation and wrongful discharge claims are based on the Defendants' decision to discharge the Plaintiff.  In contrast, the Plaintiff's outrage claim is based upon the Defendants' alleged failure to investigate other employees.  Dismissal of the Plaintiff's outrage claim on the basis of retaliation is therefore inappropriate.

### B. Claim Preclusion

The doctrine of claim preclusion bars the relitigation of claims that were or should have been decided in a prior proceeding between the same parties.  *Roberson v. Perez*, 123 P.3d 844, 848 (Wash. 2005). Claim preclusion applies not only to claims that were actually

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 23

litigated in a prior proceeding, but also claims that "could have been raised, and in the exercise of reasonable diligence should have been raised." *DeYoung v. Cenex Ltd.,* 1 P.3d 587, 591 (Wash. Ct. App. 2004). A claim is not barred by claim preclusion if it could not have been litigated earlier. *Kelly-Hansen v. Kelly-Hansen*, 941 P.2d 1108, 1113-1114 (Wash. Ct. App. 1997).

The Defendants argue that the Plaintiff is barred from raising his emotional distress claims in the present suit because he could have raised them before the PAB. However, the Defendant has neither explained why, nor cited to any authority indicating, that the Plaintiff could have brought his emotional distress tort claims before the PAB. The purpose and responsibilities of the PAB suggest that it was not the appropriate forum for such tort claims. The purpose of the PAB was to "provide a system of adjudication of appeals for eligible state employees." Wash. Admin. Code 358-01-053. Its responsibilities included hearing appeals from state employees who had been "reduced, dismissed, suspended, or demoted." Wash. Admin. Code 35801-031. *See also* Wash. Rev. Code. § 41.06.170.

## X. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

The tort of negligent infliction of emotional distress has five elements in the state of Washington. First, the plaintiff must prove the four traditional elements of negligence: "duty, breach, proximate cause, and damage or injury." *Snyder v. Med. Serv. Corp.*, 35 P.3d 1158, 1163-64 (Wash. 2001). In addition, the plaintiff's emotional distress must be "manifested by objective symptoms [. . .] susceptible to medical diagnosis and proved through medical evidence." *Haubry v.*

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 24

*Snow*, 31 P.3d 1168, 1193 (Wash. Ct. App. 2001).

The Defendants argue that the Plaintiff's negligent infliction of emotional distress claims should be dismissed for two reasons. First, the Defendants argue that the negligent infliction of emotional distress claim is duplicative of the Plaintiff's discrimination claims. Second, the Defendants argue that the negligent infliction of emotional distress claim is premised upon facts that are not actionable in the state of Washington.

**A.    Duplication**

The Court finds the Defendants' duplication argument no more persuasive when it is applied to the Plaintiff's negligent infliction of emotional distress claim. As with outrage, the Plaintiff's negligent infliction of emotional distress claim is based upon the Defendants' alleged failure to investigate other employees rather than the Defendants' dismissal of the Plaintiff. Admittedly, the two sets of facts underlying the Plaintiff's emotional distress claims and discrimination claims are closely related. However, the Supreme Court of Washington has held that a negligent infliction of emotional distress claim is actionable despite being premised on facts closely intertwined with those underlying a discrimination claim in the same cause of action. See *Chea v. Men's Warehouse*, 85 Wash. App. 405, 407 (Wash. Ct. App. 1997).

**B.    Negligent Investigation**

A claim for negligent infliction of emotional distress may only be premised on negligent investigation when the legislature has imposed a duty to investigate upon the defendant by statute. *Pettis v. State*,

990 P.2d 453, 456-57 (Wash. Ct. App. 1999). Washington does not recognize the tort of negligent investigation outside the context of child abuse investigations. *Donohue v. State*, 142 P.3d 654, 667 n. 18 (Wash. Ct. App. 2006). The Defendants accordingly had no general duty to investigate under the common law. *See Pettis*, 990 P.2d at 457.

As the Defendants have argued, the Plaintiff's negligent infliction of emotional distress claim is not actionable. The sole basis for the Plaintiff's negligent infliction of emotional distress claim is the Defendants' alleged failure to properly investigate other employees. Given that the Defendants had no duty to investigate their other employees, the Plaintiff can not satisfy the first element of a negligence claim. His infliction of emotional distress claim must therefore be dismissed.

## XI.   LOST WAGES AS DAMAGES

The Defendants argue that the Plaintiff has no legal basis for seeking lost wages as damages in this lawsuit. According to the Defendants, it was the PAB and not WSU that ordered the Plaintiff's demotion. The Plaintiff's failure to appeal the PAB's decision should therefore preclude him from seeking lost wages from the Defendants. *Laymon v. Wash. Dep't of Natural Res.*, 994 P.2d 232 (Wash. Ct. App. 2000); *Chelan County v. Nykreim*, 52 P.3d 1 (Wash. 2002).

The Court is not persuaded by these arguments. In requesting lost wages, the Plaintiff is challenging not the PAB's decision to demote him, but the Defendants' failure to reinstate him following his demotion. The Ninth Circuit has expressly recognized "discriminatory failure to reinstate as a separately actionable claim" in the context

of the Americans with Disabilities Act. *Josephs v. Pac. Bell*, 443 F.3d 1050, 1060 (9th Cir. 2006). The authority from other circuits upon which the Ninth Circuit relied in reaching this conclusion deals with failure to reinstate under Title VII. *See EEOC v. City of Norfolk Police Dep't,* 45 F.3d 80 (4th Cir. 1995)*; Samuels v. Raytheon Corp.,* 934 F.2d 388 (1st Cir. 1991). The Defendant's allegedly discriminatory failure to reinstate the Plaintiff thus appears to be actionable.

The cases cited by the Defendants are inapplicable to the present case. Both *Laymon* and *Chelan County* address the necessity of exhausting administrative remedies prior to challenging the actions of a government agency in court. *Laymon*, 994 P. 2d at 236; *Chelan County*, 52 P.3d at 17. The Defendants have not raised the issue of exhaustion of administrative remedies, and the Court declines to do so.

**CONCLUSION**

The Plaintiff's Title VII and Outrage claims may proceed to trial. All other claims shall be dismissed. The Court being fully advised,

**IT IS HEREBY ORDERED:**

1. The Defendants' Motion for Summary Judgment, **Ct. Rec. 10,** is **GRANTED IN PART AND DENIED IN PART.**

2. The Plaintiff's claim for Retaliation in violation of the Law Against Discrimination of the State of Washington, Wash. Rev. Code § 49.60.210 is **DISMISSED.**

3. The Plaintiff's second cause of action, Wrongful Discharge in Violation of Public Policy, is **DISMISSED.**

4. The Plaintiff's third cause of action, Negligent Retention and Supervision, is **DISMISSED.**

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 27

5. The Plaintiff's fourth cause of action, Emotional Distress, is **DISMISSED.**

6. The Plaintiff's sixth cause of action, Deprivation of Civil Rights, brought under 42 U.S.C. § 1983, is **DISMISSED.**

7. The Defendants' Motion for Summary Judgment, **Ct. Rec. 10,** is **DENIED** as to the Plaintiff's claim for Retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3 et seq., and the Plaintiff's fifth cause of action, Outrage.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this  3rd  day of January, 2007.

                        s/ Fred Van Sickle
                          Fred Van Sickle
                   United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 28